IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EVELYN ROLON MACHADO,

    Plaintiff,

    v.

MERSA TORRES SANJURJO, et al.,

    Defendants.

CIVIL NO. 07-1455 (RLA)

## ORDER IN THE MATTER OF DEFENDANTS' MOTION TO DISMISS

Defendants have moved the court to dismiss the federal causes of action asserted in the instant complaint for their alleged failure to state a claim pursuant to the provisions of Rule 12(b)(6) Fed. R. Civ. P. Additionally, petitioners request that we decline supplemental jurisdiction. The court having reviewed the amended pleading as well as the memoranda filed by the parties hereby rules as follows.

### PROCEDURAL BACKGROUND

This action was instituted by Evelyn Rolon Machado alleging that the termination of her employment with the Instituto Nacional Complementario para la Excelencia en la Docencia ("INCED") was in retaliation for engaging in protected conduct under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732. Additionally, plaintiff alleges retaliatory harassment via a local suit instituted by defendants in reaction to her having filed an FCA administrative claim. Plaintiff

**CIVIL NO. 07-1455 (RLA)**                                                          **Page 2**

further asserts violation of the Puerto Rico torts provisions, P.R. Laws Ann. tit. 31, § 5141 (1990) under our supplemental jurisdiction 28 U.S.C. § 1367.

Named defendants are: INCED, the Asociación de Maestros de Puerto Rico ("Puerto Rico Teachers Association"), Mersa Torres Sanjurjo, INCED's Executive Director since 2004 and her conjugal partnership, as well as Ana Diaz de Rodriguez, President of both the Puerto Rico Teacher's Association and INCED's Board of Directors together with her conjugal partnership.

In their motion, petitioners contend that plaintiff has failed to establish that she engaged in protected conduct under the FCA or that INCED had knowledge of her allegedly protected activities. They further argue that the FCA does not allow for individual liability.

Additionally, defendants posit that we lack supplemental jurisdiction to entertain plaintiff's local claims.

## RULE 12(B)(6) FAILURE TO STATE A CLAIM

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Campagna v. Mass. Dep't of Env't Prot., 334 F.3d 150, 154 (1st Cir. 2003); In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); Frazier v. Fairhaven School Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank,

**CIVIL NO. 07-1455 (RLA)**                                                              **Page 3**

234 F.3d 68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any viable theory. Asoc. de Educación Privada de P.R. v. Echevarría, 385 F.3d 81, 85 (1st Cir. 2004); Campagna, 334 F.3d at 154; In re Colonial Mortgage, 324 F.3d at 15; Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) cert. denied 116 S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. Alternative Energy, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. Berezin, 234 F.3d at 70; Tompkins, 203 F.3d at 93. In other words, there is no possible relief available "under any set of facts that could be proved consistent with the allegations." Peña-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004) (citations and internal quotation marks omitted).

When disposing of a motion to dismiss under Rule (12)(b)(6) the court may look at matters outside the pleadings which have been "fairly incorporated within it and matters susceptible to judicial notice" without converting it into a summary judgment petition. In re

**CIVIL NO. 07-1455 (RLA)**                                                  **Page 4**

Colonial Mortgage, 324 F.3d at 15. In other words, in cases where "'a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule12(b)(6).'" Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (citing Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

## THE FACTS

The following facts alleged in the Amended Complaint are deemed true for purposes of the instant motion.

INCED is a non-profit corporation organized and existing under the laws of Puerto Rico.

INCED provides professional guidance for teachers and parents within the public system via training workshops for teachers and seminars to turn parents into effective tutors for their children.

In order to procure the necessary financing to provide its services, INCED submits proposals for grants to the Puerto Rico Department of Education and Department of the Family.

The workshop proposals submitted to the Puerto Rico Department of Education seek to improve the scholastic achievement of students enrolled in the public educational system thereby attaining the standards established by the Education Department.

The proposals submitted to the Puerto Rico Department of the Family are for workshops which focus on strengthening parent-child relationships, counsel regarding child abuse, domestic violence, drug and alcohol use and abuse and improvement of the student's academic achievement.

These proposals describe the nature of the workshops and the costs associated therewith. If approved, the aforementioned local government agencies disburse the requested sums from funds allocated for said purposes by the United States.

INCED hires personnel in order to carry out the aforementioned services.

Plaintiff was recruited by INCED as an accountant on August 1, 2006, and discharged approximately three months later on November 6, 2006.

On January 17, 2007, over two months after being terminated, plaintiff filed a False Claim Administrative Complaint with the Inspector General of the U.S. Department of Education reporting the following alleged violations:

A.   Payments to the Line of Credit with Westernbank totaled over $100,000.00. Funds were received by INCED to start up projects for 2006-2007. Instead, INCED used approximately $112,000.00 to pay off a credit line that it have (sic) with the aforementioned bank. Because of their action, funds were short to pay employees, suppliers and provide

**CIVIL NO. 07-1455 (RLA)** **Page 6**

       the appropriate educational services to the targeted student's population.

B. Payment of interest charged by Westernbank for the use of the Line of Credit. Interests of the line of credit were directly charged to the bank account where the granted funds were deposited.

C. Personnel hired and paid with federal funds performing work for the Asociacion de Maestros under the supervision of Mr. Victor Bonilla, Sub-Director of Asociación de Maestros de Puerto Rico.

D. Personnel hired and paid by Title IV funds, performed (sic) seminars from which INCED received payments of Title I.

E. Secretarial personnel paid by federal funds performing personal work for the Executive Director of INCED, Mrs. Mersa Torres Sanjurjo during time they were supposed to be performing work for the granted proposals.

F. INCED also received federal funds from the Commonwealth's Department of Family and Children; there were also irregularities with those funds. These consisted in:

    a. Misappropriation of meals which were supposed to be given in an activity to the children participants of the project developed by INCED with funds granted by the Commonwealth's Department of Family and Children.

        b.    Personnel hired out of the conditions proposed and approved. Personnel were hired and paid as professional services when supposed to be contracted and be paid as part time employees.

On January 30, 2007, subsequent to plaintiff's filing her False Claim Administrative Complaint, defendants filed civil suit No. KDP 07-0129(503) against plaintiff in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part.

## THE CLAIMS

Plaintiff alleges that as part of her work she ascertained, investigated and reported to defendants violations to federal laws and regulations including causing false claims to be submitted for payment to the United States by means of false records[1] and that she gave defendants express notice "that the reported conduct was illegal... and that criminal or civil litigation due to the reported illegal conduct was a reasonable possibility."[2] Plaintiff contends that her termination from employment came as a consequence thereof.

Further, plaintiff avers that as a result of her having filed a False Claim Administrative Complaint defendants instituted a public campaign of harassment and defamation against her[3] including the filing of a civil action against her in local court. According to

---

[1] Amended Complaint ¶ 22 (docket No. 22).

[2] Amended Complaint ¶ 23 (docket No. 22).

[3] Amended Complaint ¶ 29 (docket No. 22).

plaintiff, this suit falsely claimed that her termination had been prompted by her poor performance and that her FCA claims were libelous.[4]

## INDIVIDUAL LIABILITY

Plaintiff having conceded that only her employer, i.e., INCED, is subject to liability under the FCA, the retaliation claims asserted against the individual defendants based on this statute are hereby **DISMISSED**.

## THE FALSE CLAIMS ACT

The FCA, which proscribes the submission of false or fraudulent claims to the United States, was initially enacted during the Civil War period in an attempt to curb rampant fraud affecting government defense contracts.[5] The statute allows for private parties, also known as "relators",[6] to bring "qui tam"[7] actions on behalf of the government against those liable under the statute in exchange for substantial monetary relief. Enticing private individuals to uncover

---

[4] Amended Complaint ¶ 30 (docket No. 22).

[5] *See*, United States v. Stella Perez, 55 F.3d 703, 709 (1st Cir. 1995) ("FCA's specific aim was to clamp down on widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government.")

[6] *See*, United States *ex rel*. Karvelas v. Melrose-Wakefiled Hosp., 360 F.3d 220, 226 n.7 (1st Cir. 2004).

[7] "Qui tam" stands for *qui tam pro domino rege quam pro seipso* which translates into "he who as much for the king as for himself." Karvelas, 360 F.3d at 224 n.5 (internal citations and quotation marks omitted).

**CIVIL NO. 07-1455 (RLA)** **Page 9**

possible frauds was seen as a valuable tool in the government's interest in diminishing this deceptive practice. <u>United States *ex rel*. Karvelas v. Melrose-Wakefiled Hosp.</u>, 360 F.3d 220, 224 (1st Cir. 2004).

The statute proscribes fraudulent claims which are defined as "any request or demand ... for money or property which is made... if the United States Government provides any portion of the money or property which is requested or demanded." § 3729(c).

"The FCA imposes liability upon persons who 1) present or cause to be presented to the United States government, a claim for approval or payment, where 2) that claim is false or fraudulent, and 3) the action was undertaken knowingly, in other words, with actual knowledge of the falsity of the information contained in the claim, or in deliberate ignorance or reckless disregard of the truth or falsity of that information... Individuals who violate the FCA are liable for civil penalties and double or treble damages, plus the costs incurred in bringing the FCA lawsuit...." <u>Karvelas</u>, 360 F.3d at 225.

However, the FCA does not encompass all fraudulent dealings involving federal funds but rather, its scope is limited solely to the submission of the claim for disbursement.

> Not all fraudulent conduct gives rise to liability under the FCA. The statute attaches liability, not to the underlying fraudulent activity or to the government's

> wrongful payment, but to the claim for payment. Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation. Therefore, a defendant violates the FCA only when he or she has presented to the government a false or fraudulent claim, defined as any request or demand... for money or property where the government provides or will reimburse any part of the money or property requested.

Karvelas, 360 F.3d at 225 (internal brackets citations and quotation marks omitted).

"[T]he statute attaches liability not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.' Indeed, a contractor who submits a false claim for payment may still be liable under the FCA for statutory penalties, even if it did not actually induce the government to pay out funds or to suffer any loss. This focus on the claim for payment appears to reflect a congressional judgment that fraud by government contractors is best prevented by attacking the activity that presents the risk of wrongful payment, and not by waiting until the public fisc is actually damaged. By attaching liability to the claim or demand for payment, the statute encourages contractor to turn square corners when they deal with the government." United States v. Stella Perez, 55 F.3d 703, 709 (1st Cir. 1995) (internal citations and quotation marks omitted).

The FCA also protects whistle blowers by imposing liability on employers for "retalia[ting] against employees who pursue, investigate, or contribute to an action exposing fraud against the government." Maturi v. McLaughlin Research Corp., 413 F.3d 166, 171 (1st Cir. 2005). *See*, Graham County Soil & Water Conservation Dist., v. United States, 545 U.S. 409, 412, 125 S.Ct. 2444, 163 L.Ed.2d 390 (2005) (FCA amended in 1986 to allow for an additional "enforcement mechanism: a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding.")

In pertinent part, 31 U.S.C. § 3730(h) provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

In order to prevail in her retaliation claim in this case plaintiff must establish that "[she] engaged in conduct protected under the FCA; the employer knew that [she] was engaged in such conduct, and the employer discharged or discriminated against [her]

**CIVIL NO. 07-1455 (RLA)**                                                                 **Page 12**

because of [her] protected conduct." <u>Maturi</u>, 413 F.3d at 172; <u>Karvelas</u>, 360 F.3d at 235.

"If the plaintiff satisfies [her] burden, 'the burden shifts to the employer to prove that the employee would have been terminated or subjected to other adverse action even if he or she had not engaged in the protected conduct.'" <u>Maturi</u>, 413 F.3d n. 15 at 172 (citing <u>Karvelas</u>, 360 F.3d at 235.

### Protected Conduct

Pursuant to § 3730(h), "[a]n employee's conduct is protected where it involves acts done in furtherance of an FCA action." <u>Maturi</u>, 413 F.3d at 172 (citation and internal quotation marks omitted).

"In order to satisfy the first element of a cause of action under 31 U.S.C. § 3739(h), a plaintiff must demonstrate that he or she engaged in activity protected under the FCA. This element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation. Rather, an employee's conduct is protected where it involves acts done in furtherance of an FCA action..." <u>Karvelas</u>, 360 F.3d at 236 (internal citations and quotation marks omitted).

"Where an employee has not engaged in conduct protected under the FCA, he cannot meet the second and third elements of an FCA retaliation claim, as those depend upon the first." *Id.*, 360 F.3d at 237 n.22.

**CIVIL NO. 07-1455 (RLA)**                                                                 **Page 13**

### Notice to Employer

Further, notice must be given to the employee's superior, *i.e.*, the one responsible for the retaliatory action. *See*, <u>Maturi</u>, 413 F.3d at 173 (plaintiff must put "his superior on notice that FCA litigation was a distinct possibility.") "Ordinarily, an employer is charged with knowledge that an employee is engaged in protected conduct when the employer is put on notice that the employee is taking action that reasonably could lead to an FCA case." *Id.*, 413 F.3d at 172. *See also*, <u>Karvelas</u>, 360 F.3d at 236 ("conduct that reasonably could lead to a viable FCA action.")

In other words, a relator plaintiff must allege that he/she reported situations which could reasonably lead to an FCA suit.

While it is true that a plaintiff "need not have *known* that his actions could lead to a qui tam suit under the FCA, or even that a False Claims Act existed, in order to demonstrate that he engaged in protected conduct... conduct protected by the FCA is limited to activities that 'reasonably could lead' to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." *Id.*, 360 F.3d at 237 (italics in original).

"To meet the knowledge element of an FTC retaliation claim, the whistleblower must show that the employer had knowledge the employee engaged in protected activity. In other words, the employer must be

on notice that the employee is engaged in conduct that reasonably could lead to a False Claim Act case. However, just as the plaintiff is not required to know that his investigation reasonably could lead specifically to a False Claim Act action, the employer need not know that the employee has filed or plans to file a qui tam action, not even necessarily be aware of the existence of the FCA... What the employer must know is that the plaintiff is engaged in protected conduct, that is, investigation or other activity concerning false or fraudulent claims that the employer knowingly presented to the federal government." *Id.*, 360 F.3d at 238-39 (internal citations and quotation marks omitted).

"The requirement that employers have knowledge that an employee is engaged in protected conduct ensures that § 3730(h) suits are only prosecuted where there has been actual retaliation." Maturi, 413 F.3d n.14 at 172 (citation and internal quotation marks omitted).

"Where an employee's job duties involve investigating and reporting fraud, the employee's burden of proving he engaged in protected conduct is heightened." *Id.*, 413 F.3d at 172 n.16 (citation and internal quotation marks omitted). *See i.e.,* Maturi, 413 F.3d at 174 n.20 (distinguishing between threatening to disclose purportedly fraudulent conduct to auditors which was not deemed sufficient to put defendant on notice of possible FCA claim as opposed to alerting defendant to the possibility of exposing it to a federal investigatory entity or filing a whistle-blower suit).

Lastly, plaintiff must allege that her termination was prompted or motivated by her protected conduct. Karvelas, 360 F.3d at 240.

### Discussion

Defendants contend that plaintiff did not adequately allege that she engaged in protected conduct under § 3730(h) in that the complaint fails to relate the specifics of plaintiff's purported investigation nor were defendants provided with the necessary notice.

FCA retaliation suits do not require a showing of fraud and thus, the heightened pleading requirement found at Rule 9(b) Fed. R. Civ. P. is inapposite. Karvelas, 360 F.3d at 238 n. 23.

Except in cases where either a statute or rule specifically imposes a heightened pleading standard, "courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2). Under that rule, a complaint need only include a short and plain statement of the claim showing that the pleader is entitled to relief. This statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests... In... cases for which no statute or Federal Rule of Civil Procedure provides for different treatment, a court confronted with a Rule 12(b)(6) motion may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Educadores Puertorriqueños en Acción v. Rey-Hernández, 367 F.3d 61, 66 (1st Cir. 2004) (internal citations and quotation

**CIVIL NO. 07-1455 (RLA)**                                                                 **Page 16**

marks omitted). "[U]nder Fed. R. Civ. P. 8 it is not necessary that a legal theory be pleaded in the complaint if plaintiff sets forth sufficient factual allegations to state a claim showing that he is entitled to relief under *some* viable legal theory." Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir. 1989) (internal citations and quotation marks omitted, italics in original).

In order for plaintiff to adequately plead an FCA retaliation claim she must meet the notice requirement of § 3730(h) by alleging that INCED was aware that she was investigating its presentation of false or fraudulent claims for payment either to the federal government or from federal funds. Plaintiff must aver that she notified her employer - who subsequently took the adverse action - of fraudulent claims for payment which were knowingly submitted to the government. That is, defendant must be put on notice of plaintiff's investigation into the purportedly fraudulent claims of federal funds.

A review of the Amended Complaint leads us to conclude that albeit in general terms, it does include the basic elements for a viable FCA retaliation cause of action. Plaintiff alleges that: (1) she investigated and reported to her employer false and fraudulent claims which were submitted to the federal government for payment;[8] (2) criminal or civil liability was reasonably foreseeable based on

---

[8] Amended Complaint (docket No. 22) ¶ 22.

this behavior[9] and (3) she was discharged from her employment as a consequence thereof.[10]

Plaintiff also avers additional retaliatory conduct, specifically by way of a civil suit instituted against her, purportedly arising from her having filed a FCA Administrative Complaint.[11]

Based on the foregoing, we conclude that plaintiff has adduced sufficient facts to meet the minimum requirements necessary to defeat the present Rule 12(b)(6) request. In this vein, it is important to bear in mind that we are not dealing with a summary judgment petition but rather with a motion to dismiss for failure to state a cognizable cause of action which only demands minimum factual requirements.

### SUPPLEMENTAL JURISDICTION

The court having declined to dismiss the FCA claims, our supplemental jurisdiction remains unaltered.

### CONCLUSION

Defendants' Motion to Dismiss (docket No. **33**)[12] is **GRANTED** only insofar as the dismissal of the FCA retaliation claims asserted against the individual defendants. The FCA claims shall proceed exclusively against plaintiff's employer, INCED.

---

[9] Amended Complaint (docket No. 22) ¶ 23.

[10] Amended Complaint (docket No. 22) ¶¶ 24 and 25.

[11] Amended Complaint (docket No. 22) ¶¶ 30 and 32.

[12] See Opposition (docket No. **37**) and Reply (docket No. **44**).

Case 3:07-cv-01455-FAB-JA   Document 45   Filed 06/03/08   Page 18 of 18

**CIVIL NO. 07-1455 (RLA)** **Page 18**

---

Further, the tort claims asserted under the Puerto Rico Civil Code provisions shall proceed against all the defendants to this suit including the individually named defendants.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 3rd day of June, 2008.

                                              S/Raymond L. Acosta
                                              RAYMOND L. ACOSTA
                                         United States District Judge